[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15558
_____

D.C. Docket No. 9:14-cv-81522-BB

JOHN LAGE,
MARIA MANTILLA,

Plaintiffs - Appellants,

versus

OCWEN LOAN SERVICING LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 7, 2016)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and VOORHEES,[*]
District Judge.

PER CURIAM:

_____

[*] Honorable Richard L. Voorhees, United States District Judge, for the Western District
of North Carolina, sitting by designation.

In this appeal we consider whether loan servicer Ocwen Loan Servicing, LLC had a duty to evaluate an application for loss mitigation options submitted by borrowers John Lage and Maria Mantilla ("Borrowers") when, at the time the application was submitted, a foreclosure sale of the Borrowers' property was scheduled to occur in two days. Under Regulation X,[1] which implements the Real Estate Settlement Procedures Act ("RESPA"),[2] a loan servicer's duty to evaluate a borrower's loss mitigation application is triggered only when the borrower submits the application more than 37 days before the foreclosure sale. The Borrowers contend their application was timely because Ocwen subsequently postponed the foreclosure sale such that the sale actually transpired more than 37 days after they submitted their complete loss mitigation application. But Regulation X requires us to measure the timeliness of the Borrowers' application using the date the foreclosure sale was scheduled to occur when they submitted their complete application. Because the Borrowers' application was untimely, we agree with the district court that Ocwen had no duty to evaluate the Borrowers' loss mitigation application; we thus affirm the district court's grant of summary judgment to Ocwen on the Borrowers' claim seeking to hold Ocwen liable for failing to evaluate their loss mitigation application.

---

[1] 12 C.F.R. part 1024.

[2] 12 U.S.C. § 2601 *et seq*.

2

The Borrowers also challenge summary judgment entered on their separate claim that Ocwen failed to respond adequately to their subsequent notice of error as required by Regulation X.  We agree with the district court that to survive summary judgment the Borrowers had to present evidence that they suffered actual damages or were entitled to statutory damages and that they failed to do so.  Therefore we affirm the district court's grant of summary judgment with respect to the Borrowers' claim based on Ocwen's inadequate response to their notice of error.

## I.    BACKGROUND

### A.    Regulation X

This case requires us to consider two provisions of Regulation X:  one setting forth the procedures governing a servicer's review of a loss mitigation application, 12 C.F.R. § 1024.41, and the other requiring a loan servicer to respond to a notice from a borrower identifying an error in the servicing of his mortgage loan, *id.* § 1024.35.  These provisions went into effect on January 10, 2014.  *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act, 78 Fed. Reg. 10696, 10696 (Feb. 14, 2013).

The first provision dictates how a mortgage loan servicer must review a borrower's loss mitigation application.  *See* 12 C.F.R. § 1024.41.  A loss mitigation application is simply a request by a borrower for any of a number of alternatives to

3

foreclosure, known as loss mitigation options, including, among others, modification of the mortgage. *See id.* § 1024.31 ("Loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower.").

When a borrower submits a loss mitigation application at least 45 days before a foreclosure sale, the servicer must review the application promptly to determine if it is "complete." *Id.* § 1024.41(b)(2). For applications submitted 45 days or more before a foreclosure sale, the servicer must notify the borrower within five business days of receiving the application whether the application is complete or incomplete. *Id.* § 1024.41(b)(2)(i)(B). An application is considered complete when the "servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." *Id.* §1024.41(b)(1); *see also* 12 C.F.R. pt. 1024, supp. I, § 41(b)(1) cmt. 1 ("A servicer has flexibility to establish its own application requirements and to decide the type and amount of information it will require from borrowers applying for loss mitigation options.").

If the application is incomplete, the servicer must provide the borrower with an opportunity to supplement the application. The servicer must notify the borrower what additional documents and information it needs to review the application and give the borrower an opportunity to submit the requested materials.

4

*See* 12 C.F.R. § 1024.41(b)(2)(i)(B), (c)(2)(iv).[3]  Once the borrower submits the requested materials or if the servicer initially determines that the application is complete, then the application is considered "facially complete" for purposes of § 1024.41.  *Id.* § 1024.41(c)(2)(iv).[4]

The servicer then reviews the application to determine whether the borrower is eligible for any loss mitigation options.  *Id.* § 1024.41(c)(1)(i).  But a servicer only has a duty to evaluate a complete loss mitigation application that it receives "more than 37 days before a foreclosure sale."  *Id.* § 1024.41(c)(1).  When reviewing an application, the servicer must consider all loss mitigation options available to the borrower and notify the borrower in writing what options, if any, it will offer.  *Id.* § 1024.41(c)(1)(i)-(ii).[5]  The regulations require the servicer to complete its review within 30 days of receiving the borrower's complete application.  *Id.* § 1024.41(c)(1).[6]  If a servicer fails to evaluate a borrower's loss

---

[3] The servicer must "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."  12 C.F.R. § 1024.41(b)(1).

[4] If the borrower fails to provide the requested information, after a "significant period of time under the circumstances," the servicer may, in its discretion, evaluate the incomplete loss mitigation application.  12 C.F.R. § 1024.41(c)(2)(ii).

[5] In general, until the servicer notifies the borrower that she is ineligible for any loss mitigation option or the borrower rejects all loss mitigation options offered by the servicer, the servicer is prohibited from completing the foreclosure sale.  12 C.F.R. § 1024.41(g).

[6] When evaluating a facially complete application, the servicer may determine that it needs additional or corrected information from the borrower to complete its review of the application.  12 C.F.R. § 1024.41(c)(2)(iv).  The servicer may "request the missing information or corrected documents" from the borrower and must give the borrower a "reasonable opportunity" to comply with the servicer's supplemental request.  *Id.*

5

mitigation application within 30 days, the borrower has a private right of action under RESPA. *See id.* § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."); 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue "[w]hoever fails to comply with any provision of this section").

The second provision of Regulation X at issue in this case requires a servicer to investigate and respond to written notice from a borrower asserting that there was an error related to the servicing of his mortgage loan. 12 C.F.R. § 1024.35(a), (e). Under this provision, a servicer must investigate and respond to a notice from a borrower that the servicer "[f]ail[ed] to provide accurate information to a borrower regarding loss mitigation options and foreclosure." *Id.* § 1024.35(b)(7). With a few exceptions inapplicable here, the servicer must either correct the errors the borrower identified and notify the borrower in writing or, after a reasonable investigation, notify the borrower in writing that it has determined no error occurred and explain the basis for its decision. *Id.* § 1024.35(e)(1)(i). The servicer generally has 30 business days to respond to a notice of error. *Id.* § 1024.35(e)(3)(i)(C). If the servicer fails to respond adequately to the borrower's notice of error, then the borrower has a private right of action to sue the servicer under RESPA. 12 U.S.C. § 2605(e)(2), (f).

6

## B.     Factual Background

The Borrowers obtained a loan secured by a mortgage on their residential property in Boynton Beach, Florida.[7]  Three years later when the Borrowers fell behind on their loan payments, their original servicer initiated judicial foreclosure proceedings in state court.  While the foreclosure proceedings were pending, Ocwen became the loan servicer.  Subsequently, the state court entered a final judgment of foreclosure.  The foreclosure sale originally was scheduled for January 29, 2014.

Three weeks before the scheduled foreclosure sale, on January 8, the Borrowers faxed a loss mitigation application to Ocwen.  With their application, the Borrowers provided detailed information about their income and expenses along with copies of pay stubs, their most recent tax returns, and other financial records.  The next day, Ocwen acknowledged receipt of the application and explained that it would notify the Borrowers if it needed additional documents.  Over the next two weeks, the Borrowers and Ocwen communicated about the loss mitigation application.  At a January 24 mediation, Ocwen told the Borrowers that once they submitted one additional paystub, it would evaluate their application.  The Borrowers provided that paystub on January 27.

---

[7] We recite the facts here based on undisputed evidence in the record and, where material facts are in dispute, we resolve the dispute in favor of the Borrowers as we must on review of the summary judgment in favor of Ocwen.  *See McCullough v. Antolini,* 559 F.3d 1201, 1202 (11th Cir. 2009).

7

On January 28, the foreclosure sale scheduled for the next day was cancelled and rescheduled for March 14. Although the Borrowers had submitted the additional paystub, Ocwen did not conduct its loss mitigation review. Instead, three days later, on January 31, Ocwen requested that the Borrowers submit two more paystubs. Twice thereafter Ocwen informed the Borrowers that it needed additional information to review their application. According to Ocwen, the Borrowers finally submitted all necessary information and documents on March 7. Two days later, Ocwen denied the Borrowers' loan modification request as untimely because the foreclosure sale was scheduled to occur within 7 days. The foreclosure sale took place on March 14 as scheduled.

After the foreclosure sale, the Borrowers remained in the home for several months. They sent Ocwen a notice of error asserting that it failed to comply with Regulation X in reviewing their loss mitigation application. The Borrowers asserted that Ocwen failed to fulfill its duty to evaluate their application within 30 days as required under § 1024.41. Among other points, they contended that Ocwen had unduly delayed and drawn out the review process and then relied on its own delay as the basis for deeming the application untimely.

Ocwen acknowledged receipt of the notice of error and timely responded. Ocwen provided a generic response to the Borrowers' concerns about Ocwen delaying its response to their loan modification application stating that the "terms

8

of any possible modification are determined by many factors" and referring the Borrowers to the March denial letter.  October 14, 2014 Letter (Doc. 49-10).[8] Ocwen admitted that this response was based on a template and that the letter did not specifically address the Borrowers' concerns.

## C.    Procedural Background

The Borrowers filed this action against Ocwen in federal district court, alleging that Ocwen was liable under RESPA because it violated Regulation X when it failed to evaluate the merits of their loss mitigation application within 30 days as required under 12 C.F.R. § 1024.41(c).[9]  They also alleged that Ocwen was liable under RESPA because it responded inadequately to their notice of error, in violation of 12 C.F.R. § 1024.35(e).[10]

After discovery, Ocwen moved for summary judgment, and the district court granted the motion.  First, with regard to the loss mitigation claim, the court determined that Ocwen had no duty to evaluate the Borrowers' loss mitigation

---

[8] Citations to "Doc." refer to docket entries in the district court record in this case.

[9] The Borrowers did not allege that Ocwen failed to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."  12 C.F.R. § 1024.41(b)(1).

[10] The Borrowers also brought a separate negligence claim asserting that Ocwen breached duties that it owed to the Borrowers under Regulation X to review their loss mitigation application and respond to their notice of error.  But the Borrowers concede that they can prevail on their negligence claim only if Ocwen had a duty to evaluate their loss mitigation application.  Because, as explained below, Ocwen had no duty to review their loss mitigation application, the district court properly granted summary judgment on their negligence claim.

9

application under 12 C.F.R. § 1024.41 because the regulation was not in effect at the time the Borrowers submitted their January 8, 2014 loss mitigation request. Because Ocwen owed no duty, the district court concluded that it was not liable under § 1024.41 as a matter of law. Second, with regard to the notice of error claim, the court concluded that Borrowers had presented sufficient evidence to prove a violation of the regulation but failed to provide evidence of statutory or actual damages as required to sustain a claim under § 1024.35(e). Accordingly, the court granted Ocwen's motion and entered final judgment in favor of Ocwen. This appeal followed.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Likes*, 787 F.3d at 1098 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We "may affirm for any reason supported by the record, even if not relied

10

upon by the district court." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015).

### III.    ANALYSIS

On appeal, the Borrowers argue that the district court erred in granting summary judgment for two reasons.  First, they contend that Ocwen breached its duty to evaluate their loss mitigation application within 30 days as required under § 1024.41.  The district court granted summary judgment on the basis that Ocwen was not required to comply with § 1024.41 because the Borrowers submitted their initial loss mitigation application before § 1024.41 came into effect on January 10, 2014, even though their application became facially complete and then actually complete after § 1024.41's effective date.  We need not decide whether a servicer must comply with § 1024.41 when an application was initially submitted before § 1024.41's effective date but became complete after the effective date because, even assuming that § 1024.41 applies to such an application, the Borrowers' application was untimely.  At the time the Borrowers submitted their application, the foreclosure sale was scheduled to occur within 37 days.

Second, the Borrowers argue that the district court erred in concluding that they failed to provide sufficient evidence of statutory damages for their notice of error claim.  Because RESPA requires proof of a pattern or practice to invoke statutory damages and the Borrowers submitted evidence of only one potential

11

violation—Ocwen's failure to respond sufficiently to the Borrowers' notice—we find no error.

## A.    Loss Mitigation Claim

The Borrowers' claim that Ocwen violated §1024.41(c) fails because they completed their loss mitigation application too late to trigger Ocwen's duty to evaluate the application.  Although Regulation X requires a servicer to evaluate a loss mitigation application within 30 days, this duty is only triggered when the borrower submits a "complete loss mitigation application more than 37 days before a foreclosure sale."  12 C.F.R. § 1024.41(c)(1).  The Borrowers contend their application was complete as of January 27, and we assume for purposes of this appeal that this was true.   Because Ocwen received the Borrowers' complete application just two days before the foreclosure sale scheduled for January 29, however, Ocwen had no duty to evaluate the Borrowers' application.

To evaluate the timeliness of an application, Regulation X requires us to count the number of days between the date the servicer received the complete loss mitigation application and the date of the foreclosure sale.  *See id.* To determine the date of the foreclosure sale, Regulation X directs us to use the date on which the foreclosure sale was scheduled when the borrower submitted her completed application:

> To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days

12

between when a complete loss mitigation application is received and when a foreclosure sale occurs, *such determination shall be made as of the date a complete loss mitigation application is received.*

12 C.F.R. § 1024.41(b)(3) (emphasis added).  In other words, to determine whether the Borrowers' application was timely, we must ask whether, when the Borrowers submitted their complete loss mitigation application on January 27, more than 37 days remained before the foreclosure sale was scheduled to occur.  *Id.*  Because we determine timeliness based on the scheduled date of the foreclosure sale as of the date the Borrowers' complete application was received, it is irrelevant to our timeliness analysis that Ocwen subsequently rescheduled the foreclosure sale for a later date.  *See id.*

The Borrowers argue that we must use the date when the property was actually sold at foreclosure to assess whether their application was timely.  They assert that because §1024.41(b)(3) discusses when the foreclosure sale "occurs," the relevant date for measuring timeliness is the date the foreclosure sale actually transpires.  But this interpretation is inconsistent with the final clause of paragraph (b)(3), which plainly states that we must measure the proximity between the date of the foreclosure sale and the receipt of the complete loss mitigation application "as of the date a complete loss mitigation application is received."  *Id.*  We cannot adopt the Borrowers' interpretation because it would render this phrase in the regulation meaningless.  *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d

13

1241, 1245 (11th Cir. 2008) (applying rule of construction that a court must avoid an interpretation that would render portion of regulation "superfluous").

Because paragraph (b)(3) is unambiguous on this point, we need not consider the way that the Consumer Financial Protection Bureau (the "Bureau") has interpreted the regulation.  *See Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) (explaining that we defer to an agency's interpretation of its own regulation only where the regulation is ambiguous).  Nonetheless, we observe that our interpretation of paragraph (b)(3) is consistent with the commentary from the Bureau when it adopted the regulation.  *See* Amendments to the 2013 Mortgage Rules, 78 Fed. Reg. 60382, 60396-97 (Oct. 1, 2013).  After receiving questions about how the timing provisions in § 1024.41 worked when a foreclosure sale was rescheduled after a completed application was received, the Bureau explained that "for purposes of § 1024.41, timelines based on the proximity of a foreclosure sale to the receipt of a complete loss mitigation application will be determined as of the date a complete loss mitigation application is received." *Id.* at 60397.  The Bureau explained that this approach would "provide[] certainty to both servicers and borrowers" and "balance[] consumer protection and servicer needs." *Id.*

The Bureau considered and rejected a proposal that would have altered a borrower's rights and the servicer's corresponding duties if a foreclosure sale was rescheduled after receipt of a complete loss mitigation application—that is, the

14

Bureau expressly disavowed the Borrowers' argument.  The Bureau explained that "structuring the rule such that a borrower's rights may be added or removed because a foreclosure sale was moved or rescheduled would not provide the certainty or simplicity created by the proposed rule."  *Id.*  The Bureau thus made clear that an untimely application should not become timely simply because the servicer rescheduled a foreclosure sale.

The Bureau recognized that allowing a servicer's delay of a foreclosure sale to give a borrower greater rights may discourage servicers from rescheduling foreclosure sales and voluntarily considering untimely applications—actions which benefit borrowers.  *See id.* (expressing "concern[] that if moving a foreclosure sale to a later date could trigger new protections, such a policy may provide a disincentive for a servicer to reschedule a foreclosure sale for a later date").  Stated another way, the Bureau acknowledged that if a borrower's late application could become timely—and trigger the servicer's duty to evaluate the application under § 1024.41—as a result of the servicer voluntarily postponing a foreclosure sale, then it may be to the servicer's advantage to proceed with the scheduled foreclosure instead of evaluating the borrower for loss mitigation options.  *See* 78 Fed. Reg. at 10821 (discussing that some servicers may choose to review loss mitigation applications submitted 37 days or less before a foreclosure sale); 12 C.F.R. pt. 1024, supp. I, § 41(c)(2)(i) cmt. 1 (recognizing that a servicer may

15

voluntarily offer loss mitigation options to a borrower who submitted an untimely or incomplete loss mitigation application).  The Bureau was concerned that the likely result of using the actual date of the foreclosure sale to assess timeliness would be that fewer borrowers would ultimately benefit from loss mitigation options.

Because the Borrowers' loss mitigation application was untimely, the protections of 12 C.F.R. § 1024.41(c) never were triggered.  Accordingly, we find no error in the district court's grant of summary judgment to Ocwen on the Borrowers' loss mitigation claim.

**B.    Notice of Error Claim**

The Borrowers next argue that the district court erred in granting summary judgment to Ocwen on their notice of error claim on the ground that the Borrowers failed to present evidence that they were entitled to damages arising out of Ocwen's inadequate response.  Because the Borrowers acknowledge that our ruling against their argument about loss mitigation evidence renders their theory of actual damages nonviable, we must consider whether they presented evidence of a pattern or practice of RESPA noncompliance to support an award of statutory damages. We conclude they have not.

Damages are "an essential element" of a RESPA claim.  *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).  RESPA

16

recognizes two types of damages:  (1) actual damages the borrower sustained as a result of the RESPA violation and (2) "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."  12 U.S.C. § 2605(f)(1).[11]

Although "RESPA pattern-or-practice damages are not clearly defined by this Court's precedent," *Renfroe*, 822 F.3d at 1247, we can safely say that one RESPA violation, standing alone, does not constitute a pattern or practice.  Indeed, in *Renfroe*, we recognized that other courts had held that "two violations of RESPA are insufficient to support a claim for statutory damages." *Id.* (internal quotation marks omitted).  Because the Borrowers put forth no evidence of RESPA violations other than the one notice of error violation alleged in their complaint, they cannot show a pattern or practice.

The Borrowers argue that Ocwen's use of a template to respond to their notice of error supports a reasonable inference that Ocwen engaged in a pattern of providing insufficient responses to notices of error lodged by other borrowers. More specifically, they argue that it is "entirely reasonable to infer that Ocwen

---

[11] In *Renfroe*, we acknowledged that we have "not addressed in a published opinion whether RESPA pattern-or-practice damages are available in the absence of actual damages, and our unpublished opinions have used conflicting language." *Renfroe*, 822 F.3d at 1247 n.4.  But "we observe[d] without ruling on the question, that the use of 'additional' seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages." *Id.* We do not answer this question here because, as we explain below, the Borrowers failed to produce evidence of a pattern or practice of RESPA violations and thus failed to prove their entitlement to statutory damages.

17

generated this inadequate form letter in order to send it to a large number of borrowers in response to any [notice of error] that Borrowers, or any similarly situated borrower, may have sent.  Indeed, it would be unreasonable to believe that Ocwen generated a nonresponsive form letter[] and *only* sent it to Borrowers." Appellants' Br. at 20-21.

The Borrowers assume too much.  Simply using a template to respond to a notice of error does not violate RESPA.  The Borrowers presented no evidence from which we can infer that Ocwen had a pattern or practice of issuing form letters that *were unresponsive to borrowers' notices of error.  Cf. Renfroe*, 822 F.3d at 1247 (holding that allegations that a nonresponsive form letter was sent to borrowers on five separate occasions was sufficient to plead a pattern or practice of RESPA noncompliance).  Accordingly, the Borrowers failed to present evidence of a pattern or practice of RESPA noncompliance that would support a claim for statutory damages.  The district court did not err in granting summary judgment in favor of Ocwen on the Borrowers' notice of error claim.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED.**

18