[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17292
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-81676-KAM

JAKI BAEZ,
individually,

Plaintiff-Appellant,

versus

SPECIALIZED LOAN SERVICING, LLC,
Foreign Limited Liability Company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 22, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Jaki Baez claims that she suffered damages as a result of Defendant-appellee Specialized Loan Servicing, LLC's ("Specialized Loan") failure to adequately respond to her request for certain information relating to her mortgage loan.   Baez submitted her request pursuant to the provisions of Regulation X, 12 C.F.R. part 1024, which implements the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et. seq.*   If a servicer fails to comply with its obligations under RESPA or its regulations, plaintiffs can recover "any actual damages to the borrower as a result of the failure."   12 U.S.C. § 2605(f)(1)(A).

The district court granted Specialized Loan summary judgment because Baez had not shown any "actual damages" caused by the alleged failure to comply with RESPA.  On appeal, Baez contends that she suffered damages in the form of the following: (1) postage costs for sending the request for information; (2) attorney's fees flowing from a review of the deficient response; and (3) the deprivation of information that she would have received had Specialized Loan complied with its obligations.  After careful review, we agree with the district court that Baez has failed to produce sufficient evidence of actual damages caused by her servicer's failure to comply with RESPA.  We therefore affirm.

## I.  Regulation X

"RESPA is a consumer protection statute that imposes a duty on servicers of mortgage loans to acknowledge and respond to inquiries from borrowers." *Bivens v. Bank of Am., N.A.*, ___ F.3d ___, ___, 2017 WL 3529113, *2 (11th Cir. Aug. 17, 2017).  RESPA requires servicers to comply with the obligations specified in 12 U.S.C. § 2605 as well as any regulations issued to carry out the statute's purposes. *See* 12 U.S.C. § 2605(k)(1).  A servicer's failure to comply with RESPA or its implementing regulations gives rise to a private cause of action.  *See Id.* § 2605(f).

This case concerns two provisions in Regulation X, which implements RESPA.  These provisions were promulgated by the Consumer Financial Protection Bureau ("CFPB") and went into effect on January 10, 2014.  *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act, 78 Fed. Reg. 10696 (Feb. 14, 2013).

The central regulation at issue outlines a servicer's duties in responding to a borrower's "written request for information," or "RFI."  *See* 12 C.F.R. § 1024.36(a).  When a borrower requests information "with respect to the borrower's mortgage loan account," the servicer is required to take certain responsive actions within certain times periods. *See id.* § 1024.36(a). The servicer must provide written acknowledgement of the request within five days. *Id.* § 1024.36(c)   Then, within 30 days, the servicer must either provide the

3

information the borrower requested or, after a reasonable investigation, notify the borrower in writing that it has determined that the information is not available and explain the basis for its decision. *Id.* § 1024.36(d); *see id.* § 1024.36(d)(2)(i)(A) (reducing the time limit to 10 days if the borrower requests the identity of the secured creditor). The regulation also specifies, among other things, alternative means of compliance, *id.* § 1024.36(e), as well as situations in which a servicer is not required to provide the information requested, *id.* § 1024.36(f).

The second regulation at issue, 12 C.F.R. § 1024.41, "dictates how a mortgage loan servicer must review a borrower's loss mitigation application." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006–07 (11th Cir. 2016) (summarizing the requirements of this regulation). "A loss mitigation application is simply a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." *Id.* at 1006.

## II.  Factual Background

Baez purchased her home in 2005 with a mortgage loan from First Franklin Bank. At some point, Specialized Loan took over as her mortgage loan servicer. Since that time, Baez claims, Specialized Loan has continued to raise her monthly mortgage payments without providing adequate explanation.

4

In January 2015, Baez stopped paying her mortgage to see if she could qualify for a loan modification agreement that worked for her. Around that time, she retained the law firm of Korte & Wortman, P.S. (the "Korte firm") to both help with any ensuing foreclosure and to achieve a loan modification. She has paid the Korte firm a flat fee of $400 per month since that time.

Baez testified that she tried to work with Specialized Loan to get information about why her mortgage payments were rising and whether she could obtain a loan modification so that she could save her home. But Specialized Loan, according to Baez, was unresponsive or unhelpful. In her view, Specialized Loan stonewalled her efforts to obtain a modification by saying that it had not received necessary documents that Baez had sent. And even though she received "confirmations" about submitting all necessary documents, Baez could not understand why she was never approved.

On September 18, 2015, Baez, through her attorney, sent a request for information to Specialized Loan. In the request, she asked for information about her mortgage loan, including any loss-mitigation applications she had submitted, a payoff quote, and any notifications of servicer transfer. Specialized Loan acknowledged the request and later submitted a packet of information in response. Baez claims that the packet was deficient because it contained no correspondence file of what Specialized Loan had communicated to Baez. She specifically points

5

to two letters Specialized Loan sent her, dated March 18, 2015, and May 5, 2015, respectively, which were produced during discovery in this case but which were not included in Specialized Loan's response.

Soon after she received Specialized Loan's purportedly deficient response to her request for information, Baez filed suit in state court alleging a violation of RESPA. Specialized Loan removed the matter to federal district court and then moved to dismiss the complaint. The district court denied the motion, and the case proceeded through discovery. Both parties moved for summary judgment at the close of discovery. Ultimately, the district court granted summary judgment to Specialized Loan on the ground that Baez had failed to show that she had been injured by Specialized Loan's response to her RFI.[1] Baez now appeals.

## III.  Standard of Review

We review *de novo* the district court's grant of summary judgment. *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in favor of the party opposing summary judgment, "there is

---

[1] Specialized Loan maintains on appeal, as it argued before the district court, that its obligation to respond is limited to requests for information relating to "servicing" of the loan, *see* 12 U.S.C. § 2605(i)(3) (defining the term "servicing"), which in its view does not include requests like Baez's related to loan modification. Baez responds that the version of Regulation X promulgated by the CFPB expanded a servicer's response obligations to include any request for information "with respect to the borrower's mortgage loan," 12 C.F.R. § 1024.36(a), which in Baez's view includes requests related to loan modification. The district court did not reach this issue, and we find it unnecessary to resolve. Even assuming that Baez has established a RESPA violation, she has not established actual damages as a result of that violation.

6

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(a).

## IV.  Discussion

A servicer's failure to comply with its RESPA obligations allows a borrower to recover any "actual damages . . . as a result of the failure" and "any additional damages," not to exceed $2,000, if there is "a pattern or practice of noncompliance" with RESPA.  12 U.S.C. § 2605(f)(1).  "Damages are an essential element of a RESPA claim."  *Lage*, 839 F.3d at 1011.  Thus, to prevail on a RESPA claim, a plaintiff must show (1) a failure to comply with a RESPA obligation and (2) actual damages sustained as a result of the failure to comply. *Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1244 (11th Cir. 2016).

We have not defined "actual damages" under RESPA, and that term is not defined in the statute itself.  *See* 12 U.S.C. § 2605(f)(1)(A).  Nor have we applied a consistent definition of that term across statutes.  *Compare Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872–73 (11th Cir. 2009) (holding that, under the Privacy Act, 5 U.S.C. § 552a(g)(4), "actual damages" means "pecuniary losses" only, and does not include recovery for "mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries"); *with Banai v. Sec'y U.S. Dep't of Hous. & Urban Dev. ex rel. Times*, 102 F.3d 1203, 1207 (11th Cir.1997) (stating that the Fair Housing Act's allowance for "actual damages," 42 U.S.C.

7

§ 3612(g)(3), includes compensation for "anger, embarrassment, and emotional distress"). Because it is not necessary to the result, we construe "actual damages" broadly and assume, but do not decide, that plaintiffs can recover both pecuniary losses and non-pecuniary losses under RESPA. *See Renfroe, LLC*, 822 F.3d at 1244 (RESPA is a "remedial consumer-protection statute" that "should be construed liberally in order to best serve Congress's intent").

For actual damages to be "a result of" a servicer's noncompliance, the "plaintiff must present evidence to establish a causal link between the [servicer's] noncompliance and [her] damages." *See Turner v. Beneficial Corp.*, 242 F.3d 1023, 1027–28 (11th Cir.2001) (*en banc*) (interpreting the Truth in Lending Act ("TILA"), which similarly allows for recovery of "actual damage sustained . . . as a result of the failure" to comply with the TILA, 15 U.S.C. § 1640(a)(1)).

Baez asserts that she was harmed by Specialized Loan's response to her RFI, which we assume *arguendo* failed to comply with Regulation X, in three ways. First, she paid $4.70 in postage to send the request for information in the first place. Second, she paid her attorneys to review Specialized Loan's deficient response. Finally, Baez claims that the deficient response deprived her and her counsel "of the ability to determine whether there was another RESPA violation under §1024.41(b)(2), which governs loss mitigation procedures." The "lack of

8

information that is due," she says, "is the damages."  (Emphasis omitted).  We

address each contention in turn.

First, the cost of sending an initial request for information is not a cost to the

borrower "as a result of the failure" to comply with a RESPA obligation.  *See* 12

U.S.C. § 2605(f)(1)(A).  At the time the request is sent, and the postage cost

incurred, no RESPA violation has occurred, nor will one necessarily occur.  The

servicer may adequately respond to the request, or it may not, but the postage cost

to the borrower is the same in both instances.  A cost that is incurred whether or

not the servicer complies with its obligations is not a cost that is caused by, or "a

result of," the failure to comply.[2]  *See Turner*, 242 F.3d at 1028.

---

[2] This is not a situation in which a past error becomes "current," as in *Renfroe*.  In *Renfroe*, we held that a plaintiff could establish actual damages where a servicer fails to respond to a notice of error by fixing past errors and issuing refunds of erroneous charges.  *See* 822 F.3d at 1246.  That is because a notice of error "makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary." *Id.* Thus, "[w]hen a plaintiff plausibly alleges that a servicer violated its statutory obligations and as a result the plaintiff did not receive a refund of erroneous charges, she has been cognizably harmed." *Id.* at 1246–47.  Here, in contrast, the servicer's compliance or lack of compliance with its RESPA obligations has no effect on the costs Baez incurred in sending the initial request.  For instance, a plaintiff is not entitled to a return of her postage costs if the servicer adequately responds.

For similar reasons, we do not find persuasive Baez's reliance on Sixth Circuit precedent, which appears to allow recovery for the initial costs of preparing and sending a request for information where the servicer gives a deficient response. *See Marais v. Chase Home Finance LLC*, 736 F.3d 711, 721 (6th Cir. 2013) ("[T]he district court's determination that costs Marais incurred associated with preparing her [request] did not constitute actual damages did not take into account Marais's argument that those costs were for naught due to Chase's deficient response, *i.e.*, her [request] expenses became actual damages when Chase ignored its statutory duties to adequately respond.") (citation omitted).  As explained above, the cost of preparing and sending the request, even if it is "for naught," is not causally linked to the deficient response.

For similar reasons, we agree with the district court that Baez's evidence fails to show a causal connection between her attorney's review time and Specialized Loan's deficient response.  Leaving aside the question of whether attorney's fees are damages recoverable under § 2605(f), the undisputed evidence reflects that Baez had hired the Korte firm for a flat monthly fee to help with any ensuing foreclosure and to achieve a loan modification.  There is no evidence that Baez incurred any additional representation costs as a result of the deficient response.  For instance, Baez has not shown that the deficient response caused her to retain the Korte firm for longer than she otherwise would have.  And the Korte firm would have reviewed the response whether or not it complied with Regulation X.  Accordingly, the portion of her monthly fee Baez attributes to her attorney's review of the deficient response does not qualify as "actual damages . . . as a result of" Specialized Loan's failure to comply with RESPA.

Finally, Baez argues that Specialized Loan's deficient response—specifically its failure to produce the March 2015 and May 2015 letters to Baez, among others—caused her "to forego immediately bringing a § 1024.41 claim" alongside the claim for failure to adequately respond to her RFI.  Baez casts § 1024.34 as an investigative tool for borrowers to discover other RESPA violations.  If a servicer frustrates that investigation by failing to respond or by providing a deficient response, Baez reasons, it also frustrates a borrower's ability

10

to enforce its other rights under RESPA.  As a result, according to Baez, a servicer should be held liable in circumstances where, as here, its response was deficient. Otherwise, she reasons, servicers can frustrate a borrower's ability to enforce its RESPA rights with relative impunity.

We have recognized that a plaintiff could potentially prove actual damages for purposes of RESPA by showing that the servicer's deficient response "prevented her from taking some important action." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. 2014) ("[Bates] has not explained why her lack of knowing why she received the check in March somehow caused her additional damages or prevented her from taking some important action.").  But there is still a need for causation, which Baez does not dispute.  And the plaintiff, in order to have standing to bring such a claim, must establish "a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

We need not resolve this issue here, however, because, in any case, she has not properly preserved it for appeal.  Throughout the proceedings before the district court, Baez never claimed, as she does on appeal, that the lack of information itself was the damages.  In her motion for summary judgment, her response in opposition to Specialized Loan's motion for summary judgment, and her reply to the Specialized Loan's response to her motion for summary judgment,

11

the only "actual damages" Baez requested were the cost of postage ($4.70) and her attorney's review time ($75.00).  Her reply makes this explicit:  she requested "a judgment in the amount of $79.70, plus attorney's fee and costs."  To be sure, in her filings below, she addressed the interplay between § 1024.34 and § 1024.41 and the importance of receiving complete loss-mitigation information from the servicer in response to an RFI, but she never put forth the specific argument that she advances on appeal—that the failure to produce information due in response to an RFI is itself "actual damages."

It is well settled that we will generally not consider on appeal an issue or argument not fairly presented to the district court.  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598–99 (11th Cir. 1995).  While we have the discretion to consider arguments raised for the first time on appeal, we will do so only in "special circumstances."  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (outlining these circumstances).  We find no special circumstances in this case that warrant our reaching an issue that was not fairly presented to the district court.

## V. Conclusion

For these reasons, we agree with the district court that Baez failed to establish sufficient competent evidence of "actual damages . . . as a result of"

12

Specialized Loan's failure to comply with RESPA or Regulation X.[3]  Accordingly,

we **AFFIRM** the district court's grant of summary judgment against Baez.

---

[3] To the extent Baez claims to have suffered damages in the form of mental anguish, she raised that issue for the first time in her reply brief, so it is not properly before us.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (new arguments raised in a reply brief "come too late").  In any case, Baez's claim of mental anguish is based on the entire course of her interactions with Specialized Loan.  It has no clear causal connection to Specialized Loan's deficient response.