[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13134
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-22987-UU

FRANCISCO URDANETA,

Plaintiff-Appellant,

versus

WELLS FARGO BANK N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 16, 2018)

Before TJOFLAT, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Francisco Urdaneta filed a *pro se* civil suit against his mortgagor, Wells Fargo Bank N.A. ("Wells Fargo"), alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 ("RESPA").  Urdaneta appeals the district court's denial of his motion for an extension of time to respond to Wells Fargo's motion for summary judgment and the subsequent grant of summary judgment by the district court in favor of Wells Fargo, both by default and on the merits.  After careful review, we affirm.

The present dispute arose after Urdaneta apparently defaulted on a mortgage loan.  When Urdaneta defaulted, Wells Fargo, as a successor in interest on the loan, commenced foreclosure proceedings in state court.  In March 2013, the state court issued a final judgment in favor of Wells Fargo with respect to the foreclosure action.

Following the entry of the foreclosure judgment, but before his home was sold at a foreclosure sale, Urdaneta sought to modify his loan by submitting an application with Wells Fargo for loss mitigation.  Wells Fargo responded by informing Urdaneta that his application had omitted numerous required documents. Urdaneta received two subsequent letters from Wells Fargo again advising him that Wells Fargo could not assist him unless he provided additional information related to his income, expenses, and claimed hardship.  Ultimately, Wells Fargo informed Urdaneta by written correspondence that he did not qualify for mortgage

2

assistance, that he had the right to appeal the decision, and that he might have other options available to avoid a foreclosure sale.

Urdaneta filed the present *pro se* suit against Wells Fargo in July 2016 alleging, among other things, that Wells Fargo violated his rights under RESPA, 12 U.S.C. § 2601 and 12 C.F.R. § 1024.41(c)(1)(ii) ("Regulation X"). Urdaneta also requested judicial review of his loan-modification process. In his Complaint, Urdaneta alleged that Wells Fargo failed to (1) evaluate him for all loss-mitigation options, even though he was qualified for loan modification; (2) notify him that his loan-modification applications had been denied, and that he had a right to appeal the decision; and (3) timely complete its review of his loan-modification applications.

Relevant to this appeal, the district court entered orders setting forth various pretrial deadlines and, in light of Urdaneta's *pro se* status, expressly warned him that the "[f]ailure to comply with [those] deadlines . . . [would] result in dismissal of this case for lack of prosecution." Urdaneta nevertheless still missed certain deadlines. He also did not respond to Wells Fargo's requests for admissions during discovery.

On May 12, 2017, Wells Fargo moved for entry of summary judgment. On the last day in which to respond, Urdaneta filed a motion for extension of time to respond to the motion, citing a medical condition (kidney stones) as the reason for

3

the requested extension.  Urdaneta, however, did not specify the length of time needed to respond to the pending motion for summary judgment.  On May 31, 2017, the district court entered an order denying Urdaneta's motion for extension of time.  Despite the denial, the court actually provided Urdaneta until June 5, 2017, to respond to the summary-judgment motion.  In the same order, the district court noted that Urdaneta had also failed to confer with Wells Fargo regarding the Pretrial Stipulation, Jury Instructions, and Jury Verdict Form.  The district court warned Urdaneta that a failure to respond to the motion for summary judgment by June 5, 2017, "may result in the granting of [the motion] by default."

When Urdaneta failed to respond at all to the motion for summary judgment, the district court granted it, both by default and on the merits.  In its June 12, 2017, order, the district court noted that as of the date of the order, Urdaneta had not responded to the motion for summary judgment, even though his original response was due seventeen days earlier and even with the extension until June 5, 2017.  The district therefore granted Wells Fargo's motion by default.  But the district court nevertheless continued, indicating that it had "considered [Wells Fargo's] Motion on the merits and concludes that it should be granted."  Accordingly, the district court entered judgment in favor of Wells Fargo.

Urdaneta appeals, claiming the district court erred when it denied his motion for extension of time and entered summary judgment in favor of Wells Fargo by default and on the merits.

I.

We review for an abuse of discretion a district court's denial of a motion for an extension of time to file a response to a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 863 (11th Cir. 2004). When we review a district court's decision under this standard, our review is limited and "we give the court considerably more leeway than if we were reviewing the decision de novo." *Id*. (citation and internal quotation marks omitted). Under the abuse-of-discretion standard, a district court may choose from "a range of options" and will not be reversed unless it commits "a clear error in judgment." *Id*.

Although holding a *pro se* defendant to a scheduled response deadline may seem harsh, we cannot say that the district court abused its discretion when it denied Urdaneta's motion for an extension of time to respond to the motion for summary judgment. Urdaneta had already missed other deadlines, and the district court had previously warned him that failure to comply with deadlines would result in the dismissal of the case. Moreover, although the district court technically denied the motion, it actually provided Urdaneta with a few more days to respond to the motion for summary judgment. And the district court then waited another

5

week to hear from Urdaneta before it ruled on the summary-judgment motion. Here, the district court had a range of options, including refusing to allow Urdaneta additional time to file a response in light of his past record of tardiness. We cannot say that the district court clearly erred in making such a decision. *Young*, 358 F.3d at 864.

Accordingly, we affirm in this respect.

## II.

Although Urdaneta challenges the district court's grant of summary judgment by default, we need not address this argument because even if the court erred in entering judgment by default, the merits of the case warranted the entry of summary judgment in favor of Wells Fargo. We therefore address only the merits of the summary-judgment motion.

We review a district court's grant of summary judgment *de novo*, viewing the facts and inferences in the light most favorable to the non-moving party. *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1008–09 (11th Cir. 2016) (per curiam). Ultimately, we may affirm the district court on "any basis supported by the record." *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).

Summary judgment requires that the pleadings and evidence show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under the summary-judgment

standard, a party must "make a showing sufficient to establish" the essential elements of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party makes the required showing, the non-moving party has the burden of rebutting it through relevant and admissible evidence beyond the pleadings. *Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011).  If a party fails to properly support or address another party's assertion of fact in a motion for summary judgment, the court may "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Rule 36 of the Federal Rules of Civil Procedure allows a party to serve a written request to admit evidence on another party.  Fed. R. Civ. P. 36.  Evidence is admitted if the other party does not respond to it within 30 days.  Fed. R. Civ. P. 36(a)(3).  The effect of an admission is to "conclusively establish[] that evidence.  Fed. R. Civ. P. 36(b).  Here, although Wells Fargo propounded requests for admission on Urdaneta, he failed to respond.  Accordingly, those requests are deemed admitted for purposes of summary judgment.

We now turn to the crux of Urdaneta's RESPA-violation claim.  As noted above, Urdaneta asserted that Wells Fargo failed to (1) evaluate him for loss-mitigation options; (2) notify him that his applications had been denied, and that he

7

had a right to appeal the decision; and (3) timely complete its review of his loan-modification applications. After reviewing the record, we disagree and find that the entry of summary judgment in favor of Wells Fargo was warranted.

RESPA is a statute that regulates the real-estate settlement process. *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). The Act authorizes the Consumer Financial Protection Bureau to prescribe rules and regulations to achieve RESPA's purpose, which it has done, in part, by promulgating 12 C.F.R. § 1024.41(c)(1)(ii) ("Regulation X"). *See id.*; 12 U.S.C. § 2617(a). Section 2605(f) of RESPA establishes a private right of action for a borrower to enforce RESPA and Regulation X. *See id.*; 12 U.S.C. § 2605(f).

Regulation X, in turn, establishes obligations for how a mortgage-loan servicer must handle a borrower's loss-mitigation application.[1] *See Lage*, 839 F.3d at 1006. But, nothing in Regulation X imposes a duty on a loan servicer to provide a borrower with "any specific loss mitigation option." 12 C.F.R. § 1024.41(a). Generally speaking, Regulation X requires a loan servicer to evaluate a complete loss-mitigation application within 30 days of receipt of the application. 12 C.F.R. § 1024.41(c)(1) (2017); *Lage*, 839 F.3d at 1009. The loan servicer's obligations, however, are triggered only when the servicer receives from a borrower a

---

[1] A loss-mitigation application is a "request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." *Lage*, 839 F.3d at 1006 (citation omitted).

"complete loss mitigation application more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(c)(1); *see Lage*, 839 F.3d at 1009.

An application is considered to be "complete" under Regulation X when the "servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). Indeed, this Court has held that "although Regulation X requires a servicer to evaluate a loss mitigation application within 30 days, this duty is only triggered when the borrower submits a *complete* loss mitigation application more than 37 days before a foreclosure sale." *Lage*, 839 F.3d at 1009 (citation and internal quotation marks omitted) (emphasis added). When faced with an incomplete application, a servicer must exercise "reasonable diligence in obtaining documents and information to complete" the application. *See* 12 C.F.R. § 1024.41(b)(1). But if the borrower does not make the application complete for a "significant period," Regulation X allows the servicer to use its discretion and evaluate an incomplete application for loss-mitigation options available to the borrower. 12 C.F.R. § 1024.41(c)(2)(ii).

True, Regulation X was amended in 2017. But under the version of the regulation effective from January 10, 2014, until October 19, 2017—covering the period during which Urdaneta submitted each of his applications—Wells Fargo was required to comply with only Regulation X's obligations to assess an

9

application "for a *single* complete loss mitigation application for a borrower's mortgage loan account."   12 C.F.R. § 1024.41(i) (2016) (emphasis added).

With these principles in mind, we conclude that the district court did not err when it granted Wells Fargo's motion for summary judgment on the merits. Ultimately, Urdaneta failed to show that he had submitted a complete loss-mitigation application to trigger Wells Fargo's Regulation X obligations to evaluate him for loss mitigation options.  *See Josendis*, 662 F.3d at 1315; 12 C.F.R. § 1024.41(c)(1).  A review of the loan modification requests that Urdaneta submitted to Wells Fargo, which are attached to the Amended Complaint, reveals their incomplete nature.  For instance, one request consists solely of a single page stating that other materials were purportedly sent via facsimile with a cover sheet labeled "modification request."

Additionally, Wells Fargo sent correspondence to Urdaneta on numerous occasions advising him that it had not received a complete application and, as a result, it could not offer him assistance options.   And Wells Fargo advised Urdaneta of the specific financial information needed to complete the application. Indeed, Wells Fargo provided Urdaneta with a chart indicating which documents had been received and which were incomplete or missing.   Despite this information, Urdaneta never provided the required documents in order to make his application "complete."  For this reason alone, it was appropriate to enter summary

10

judgment in favor of Wells Fargo.  The failure to submit a complete application did not trigger any duty by Wells Fargo under RESPA and doomed Urdaneta's claim.

Second, even if Urdaneta could be deemed to have submitted complete applications, Wells Fargo complied with Regulation X.  Under the plain language of § 1024.41, a servicer is required only to "[e]valuate the borrower for all loss mitigation options available to the borrower."  12 C.F.R. § 1024.41(c)(1)(i).  Wells Fargo did this.  On November 6, 2014—19 days following Urdaneta's October 18, 2014 submission of his loan application—Wells Fargo advised him in writing that it had reviewed his eligibility for three separate loss options but had determined that he did not qualify for any of them based on the information provided by Urdaneta.[2]

Wells Fargo completed the same evaluation in relation to Urdaneta's February 27, 2015, loss-modification application.  In fact, on May 13, 2015— fewer than thirty days from Wells Fargo's request for additional information from Urdaneta—it again informed Urdaneta that it had reviewed his eligibility for the same three loss-mitigation options but had determined that he did not qualify for the programs.  In each instance, Wells Fargo's correspondence detailed why each of the applications was denied.  And significantly, each of these letters informed Urdaneta that he had a right to appeal the decision within thirty days and explained

---

[2] Wells Fargo reviewed Urdaneta's eligibility for the Proprietary Step Rate Program, the MAP2R Modification Program and Home Affordable Modification Program.

how he could exercise that right.  Wells Fargo's letters therefore complied with the requirements of § 1024.41(c)(ii).

Based on this evidence, Wells Fargo complied with its obligations under sections 1024.41(c)(1)(i) and (ii) of Regulation X concerning the loss-mitigation applications submitted by Urdaneta from 2014 through 2016.  Thus, the district court properly determined that Wells Fargo was entitled to summary judgment on the merits.[3]

Finally, Urdaneta's claim of a right to judicial review of the loan-modification process is not a separate cause of action.  Rather, it is merely duplicative of the RESPA claim, contained in the same count.  Accordingly, the claim fails for the reasons already discussed.

Ultimately, we conclude that the district court did not err when it entered summary judgment in favor of Wells Fargo.  We therefore affirm.

**AFFIRMED.**

---

[3] We also note that damages are an "essential element" of a RESPA claim.  *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).  RESPA provides for only two types of damages: (1) actual damages suffered by the borrower as a result of the RESPA violation and (2) any additional damages from a pattern or practice of noncompliance by the servicer.  12 U.S.C. § 2605(f)(1); *Lage*, 839 F.3d at 1011.  While we do not decide the outcome of this appeal on this ground, we note that Urdaneta appears to have failed to establish that he suffered damages resulting from Wells Fargo's alleged RESPA violation.  The Amended Complaint is devoid of allegations or facts that support a finding that he incurred actual damages as a result of Wells Fargo's alleged mishandling of his loss-mitigation applications.  It also fails to demonstrate a pattern or practice of noncompliance by Wells Fargo.