[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11151
_____

D.C. Docket No. 0:16-cv-62795-BB

RACHEL LANDAU,

Plaintiff - Appellant,

versus

ROUNDPOINT MORTGAGE SERVICING CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 11, 2019)

Before ED CARNES, Chief Judge, ROSENBAUM, and HULL, Circuit Judges.

ROSENBAUM, Circuit Judge:

Abraham Lincoln is said to have once posed the following riddle: "If I should

call a sheep's tail a leg, how many legs would it have?"  https://quoteinvestigator.

com/2015/11/15/legs/ (last visited May 31, 2019) (quoting *What the President Said*, Daily Milwaukee News, Sept. 23, 1862, at 1).  His answer?  "[O]nly four;  for my calling the tail a leg would not make it so."  *Id.*  That riddle describes the problem Plaintiff-Appellant Rachel Landau has here.

Landau's home was the subject of an order of foreclosure sale.  After that order was entered, Defendant-Appellee RoundPoint Mortgage Servicing Corporation ("RoundPoint"), Landau's mortgage-loan servicer, approved Landau for a trial loan-modification plan.  Because the previously issued order of sale had set a foreclosure sale during what became Landau's six-month trial loan-modification period, RoundPoint filed a motion to reschedule the sale so it would not be held unless Landau failed to comply with her loan-modification plan during the trial period.

Landau sued, pointing to 12 C.F.R. § 1024.41(g) of Regulation X, 12 C.F.R. § 1024.1, *et seq.*, promulgated under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA").  Among other things, under certain circumstances, § 1024.41(g) prohibits a loan servicer from moving for an order of foreclosure sale after a borrower has submitted a complete loss-mitigation application, as Landau had here.  Based on this regulation, Landau alleged that RoundPoint's motion to reschedule the foreclosure sale (as opposed to canceling it

altogether) violated § 1024.41(g) because that motion was itself a motion for order of foreclosure sale. The district court disagreed and dismissed Landau's case.

After careful review, we agree with the district court: a motion to reschedule a previously ordered foreclosure sale is not a motion for order of sale any more than a tail is a leg. The language of § 1024.41(g) requires that answer, and Landau's position is inconsistent with that language—as well as, ironically, with RESPA's consumer-protection purpose. We therefore affirm the district court's decision dismissing Landau's case for failure to state a claim.

## I.

We set forth the relevant facts as alleged in Landau's complaint, construing them in the light most favorable to her. *See Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

In September 2000, Landau entered into an adjustable-rate promissory note that was secured by a mortgage on her residence in Coral Springs, Florida, held by Random Properties Acquisition Corp., III ("Random"). In June 2014, after Landau had become delinquent in her mortgage payments, Random filed a foreclosure action in Florida state court (the "foreclosure action").

Following the filing of the foreclosure action, Landau attempted to enter a loss-mitigation program in an effort to save her home. Landau was unsuccessful, and the foreclosure action proceeded until Random obtained a "Final Summary

3

Judgment" order in the foreclosure action on February 3, 2016. In addition to entering judgment in favor of Random, the order set a foreclosure sale for Landau's property for June 2, 2016. This sale date was continued a number of times because Landau was being evaluated for a loan modification, but the final foreclosure sale was ultimately reset to take place on October 5, 2016.

In the meantime, Landau's mortgage loan was transferred to RoundPoint for servicing. With a renewed sense of hope, Landau submitted a loss-mitigation application to RoundPoint. Landau's persistence was rewarded.

In early September 2016, RoundPoint sent Landau a letter informing her that she had been approved to "enter into a trial period plan for a mortgage modification." The plan required Landau to satisfy a schedule of six monthly payments in the amount of $1,721.01, beginning on October 1, 2016. In the letter, RoundPoint also explained that if Landau accepted the offer, RoundPoint would "not refer [her] loan to foreclosure or [would] suspend foreclosure if [her] loan had already been referred." Landau accepted the offer.

After Landau's acceptance, on September 22, 2016, Random filed its "Motion to Cancel October 5, 2016 Foreclosure Sale and Reschedule Foreclosure Sale" in the foreclosure action. The motion noted that a Final Judgment of Foreclosure had been entered in the case on February 3, 2016, and that a foreclosure sale was scheduled to occur on October 5, 2016. Noting that Landau was "in active loss mitigation,"

the motion asked the court to "cancel the October 5, 2016 foreclosure sale and reschedule the foreclosure sale to occur no sooner than thirty (30) days from the entry of an Order on said Motion."

Four days later, Landau responded by filing an emergency "Motion to Cancel Sale" in the foreclosure case. In her motion, Landau informed the foreclosure court that she had "submitted a complete application in compliance with the Lender's Loss Mitigation options, which was approved for a trial modification." The motion also explained that Landau had accepted the trial modification plan and that she had remitted her first payment under it. Finally, Landau's motion sought for the foreclosure court "to cancel, and not reset, the October 5, 2016 foreclosure sale." The foreclosure court granted Landau's motion and canceled the foreclosure sale without setting a new sale date.

Two weeks later, Landau's counsel sent RoundPoint a Notice of Error under 12 C.F.R. § 1024.35 of Regulation X.[1] The Notice of Error reminded RoundPoint that under 12 C.F.R. § 1024.41(g), it was prohibited from making any dispositive

---

[1] A Notice of Error is known as an "NOE," and it is a "written notice from a borrower asserting that there was an error related to the servicing of [her] mortgage loan." *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) (per curiam) (citing 12 C.F.R. § 1024.35(a), (e)). The loan servicer generally has thirty business days to respond to a notice of error. 12 C.F.R. § 1024.35(e)(1)(i); § 1024.35(e)(3)(i)(C). "If the loan servicer fails to respond adequately to the borrower's notice of error, then the borrower has a private right of action to sue the servicer under RESPA." *Lage*, 839 F.3d at 1007 (citing 12 U.S.C. § 2605(e)(2), (f)); *see also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016). For ease of reading— and because we think we already have enough abbreviations in this opinion—we refer to the Notice of Error here as a "Notice of Error," as opposed to an NOE.

motions, including moving for judgment or orders of sale following the receipt of a complete modification package.  Attributing Random's actions to RoundPoint, the Notice of Error then alleged that RoundPoint had violated Regulation X by seeking to reschedule the foreclosure sale.  The Notice of Error further asserted that RoundPoint had failed to take "reasonable steps" to cancel the October 5, 2016, foreclosure sale.

Before Landau received a substantive response from RoundPoint, she filed a complaint alleging violations of RESPA, Regulation X, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").  In Count I, she alleged that RoundPoint failed to comply with § 1024.41(g) of Regulation X when it filed a motion in the foreclosure action seeking an order rescheduling the foreclosure sale of Landau's home after she had been approved for a loan-modification plan.  She further asserted that, by engaging in the action it did, RoundPoint also neglected to take reasonable steps to avoid a ruling on the order of sale for the home.  In Count II, Landau claimed a violation of the FDCPA, 15 U.S.C. § 1692e(2)(A) and (5), for the same reasons.

RoundPoint filed a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a cause of action upon which relief could be granted.  In particular, RoundPoint asserted that it did not violate § 1024.41(g) of Regulation X, since at the time it filed its Motion to Cancel and Reschedule, an order for the sale of Landau's

6

home was already in place as a result of the entry of the foreclosure judgment. So, RoundPoint contended, at no time after Landau accepted the modification plan did RoundPoint take any steps to "move for foreclosure judgment or sale, or conduct a foreclosure sale" as prohibited by § 1024.41(g).[2] And because RoundPoint reasoned that rescheduling a previous foreclosure sale date was not a violation of § 1024.41(g), it argued that Count I failed to state a cause of action upon which relief could be granted. As for Count II's FDCPA claim, RoundPoint asserted that that claim failed as well, since it was also based on an alleged violation of Regulation X.

The district court granted RoundPoint's motion and dismissed Landau's Complaint with prejudice. It concluded that RESPA and Regulation X did not prohibit a request for a foreclosure sale to be rescheduled while the borrower is engaged in a modification plan where the foreclosure judgment and order of sale were entered before the commencement of the modification plan. And since the FDCPA claim was based on the alleged RESPA violation, the district court dismissed both counts in the Complaint.

Landau now appeals.

---

[2] RoundPoint noted that Landau sought to impute the actions of Random to it but asserted that Landau failed to plead sufficient allegations of fact to make such a causal link. Nevertheless, RoundPoint responded to the allegations in the Complaint as if she had.

**II.**

We review *de novo* the district court's order granting a motion to dismiss for failure to state a claim, under Rule 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Henderson*, 454 F.3d at 1281.    We also review *de novo* the district court's interpretation of Regulation X.    *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys.*, *Inc.,* 622 F.3d 1307, 1320 (11th Cir. 2010).

**III.**

For purposes of this appeal, we assume without deciding that the actions of Random, including the filing of the motion to reschedule the foreclosure sale, are attributable to RoundPoint. We recognize that RoundPoint disputes this proposition, but because we affirm the dismissal of the Complaint on other grounds, we do not decide this issue.

Once we get past that assumption, the facts of this case are undisputed. This appeal centers on what Regulation X's § 1024.41(g) means.[3] The parties agree that 12 C.F.R. § 1024.41(g) prohibits a loan servicer from moving for a "foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale" where a borrower

---

[3] Neither party argues that RESPA answers the question at issue. Nor does either party suggest that Regulation X itself is inconsistent with RESPA in any way. Rather, the parties disagree over only the meaning of Regulation X. We therefore do not begin our analysis with a review of the statutory language, as we would if we were engaging in a *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984), analysis.

8

submits a complete loss-mitigation application at least 37 days before a scheduled foreclosure sale, unless certain circumstances not relevant here are present.  We must determine whether, under this regulation, a motion to reschedule a previously set foreclosure sale constitutes a motion for "order of sale."  We conclude it does not.

When we construe regulations, we begin with the language of the regulation, just as we do for statutes.  *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1105-06 (11th Cir. 2014).  We evaluate whether the plain language of the regulation unambiguously answers the question at issue when we consider the regulatory language itself, the particular context in which that language appears, and the broader context and purpose of the regulatory scheme as a whole.  *Id.* (citation omitted).  If our review of the regulatory language unambiguously answers the question at issue, that is the end of the matter, and we do not consider how the administering agency construes the regulation.  *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1010 (11th Cir. 2016) (per curiam).  Here, that is the case.

Section 1024.41 of Title 12, C.F.R. contains Regulation X's loss-mitigation procedures.  Subsection (g) of that regulation, in turn, sets forth prohibitions relating to foreclosure sales:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer ***shall not <u>move for</u>***

> ***foreclosure judgment or <u>order of sale</u>, or conduct a
> foreclosure sale*** . . . .

12 C.F.R. § 1024.41(g) (emphasis added).[4]

The plain language of the regulation provides only that "a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale." 12 C.F.R. § 1024.41(g). It does not, by its terms, prohibit a servicer from moving to reset an already-scheduled foreclosure sale. So Landau argues that RoundPoint's motion to reset the foreclosure sale constituted a motion for order of sale. We are not persuaded.

Regulation X does not define "order of sale." We therefore look to the common usage of the phrase for its meaning. *See*, *e.g.*, *Consol. Bank, N.A., Hialeah, Fla. v. U.S. Dep't of Treasury*, *Office of Comptroller of Currency*, 118 F.3d 1461, 1464 (11th Cir. 1997). To assist in that endeavor, we enlist the aid of dictionaries. *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001).

The word "order" means "[a] command, direction, or instruction." *See Order*, Black's Law Dictionary (10th ed. 2014). It also means "[a] written direction or command delivered by a government official, esp. a court or judge. The word

---

[4] The regulation lists three exceptions for when a servicer may still move for a foreclosure judgment or order of sale, or conduct a foreclosure sale. *Id*. at § 1024.41(g)(1)-(3). As we have noted, none of these exceptions applies here.

10

generally embraces final decrees as well as interlocutory directions or commands."
*Id.*

As for "of," the United States Supreme Court has recognized that commonly, that word can be "used as a function word indicating a possessive relationship." *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (quoting Webster's Third New International Dictionary 1565 (2002); also citing New Oxford American Dictionary 1180 (2d ed. 2005) (defining "of" as "indicating an association between two entities, typically one of belonging"); and Webster's New Twentieth Century Dictionary 1241 (2d ed. 1979) (defining "of" as "belonging to")).

Finally, the word "sale" means the "transfer of property or title for a price." *See Sale*, Black's Law Dictionary (10th ed. 2014). A "judicial sale"—at least under Florida law (where this foreclosure sale was set to take place)—"has been held not to be final and complete until, confirmed by the trial court." *Allstate Mortg. Corp. of Fla. v. Strasser*, 286 So. 2d 201, 202 (Fla. 1973) (citation omitted).

Taking these definitions together, an "order of sale" is a legal document issued by a court that commands or directs property to be sold so that a transfer of ownership of title to the property will occur for a price. Under this definition, we do not view a motion to simply reschedule a foreclosure sale that was previously set in accordance with an already-existing order of sale as the same thing as a motion for

11

order of sale itself. A motion for order of sale is a substantive and dispositive motion that seeks authorization from a court to conduct a foreclosure sale at all, while a motion to reschedule a foreclosure sale under an already-existing order of sale is a non-substantive, housekeeping-type motion that does no more than seek permission to change the date of sale that the court has previously ordered.

The context of § 1024.41(g)'s use of the phrase "order of sale" supports our interpretation of that phrase and undercuts Landau's. Section 1024.41(g) prohibits three things: motions for foreclosure judgment, motions for orders of sale, and foreclosure sales themselves. Motions for foreclosure judgment and foreclosure sales are clearly substantive and dispositive motions or actions. That indicates that a motion for an order of sale must also be a substantive and dipositive motion or action. *See* Antonin Scalia and Bryan A. Garner, *Reading Law* 195–98 (discussing the associated words canon, also known as the *noscitur a sociis* canon). But as we have noted, a motion seeking to reschedule a foreclosure sale that was previously set in accordance with an already-issued order of sale is a non-substantive, non-dispositive motion. Indeed, it is no more a substantive or dispositive motion than a motion that seeks to reschedule a hearing on a motion to dismiss.

Landau's proposed interpretation of § 1024.41(g) to include motions to reschedule foreclosure sales that were previously set under an existing order of sale would also be inconsistent with the consumer-protection purposes of RESPA. *See*

12

*Renfroe v. Nationstar Mortg.*, 822 F.3d 1241, 1242 (11th Cir. 2016).  If seeking to reschedule a foreclosure sale that was ordered before a borrower submitted a completed loss-mitigation application amounted to moving for an order of sale, servicers would be heavily disincentivized against offering loss-mitigation options to delinquent borrowers and helping them complete loss-mitigation applications—any time a foreclosure sale had already been scheduled.  Under those circumstances, working with borrowers to complete loss-mitigation applications would necessarily mean that a lender or servicer would forgo the ability to foreclose on a previously defaulted property for which the servicer already had a foreclosure order.  As a result, servicers that had a foreclosure order in hand would have little reason to engage with borrowers to modify their loans to enable them to escape foreclosure and stay in their homes.

Here, as we have noted, RoundPoint moved only to reschedule the foreclosure sale, which was already pending because the foreclosure court had entered the foreclosure judgment in the foreclosure case before Landau submitted her application for loan modification to RoundPoint, and that judgment included within it an order of sale setting a foreclosure sale.  RoundPoint's motion did not itself seek the entry of a previously non-existent order of sale.[5]  Because RoundPoint already

---

[5] RoundPoint's motion explicitly informed the foreclosure court that it was seeking to cancel the foreclosure sale because Landau was in "active loss mitigation."  Landau intimates that RoundPoint misled the foreclosure court into believing that no loss-mitigation plan was in place,

13

had secured a foreclosure judgment and order of sale before Landau submitted her completed loss-mitigation application, § 1024.41(g) prohibited it only from conducting the actual foreclosure sale. And, of course, RoundPoint never conducted the foreclosure sale on Landau's home. For these reasons, RoundPoint did not violate Regulation X, and the district court correctly granted RoundPoint's motion to dismiss.

Nor, as Landau argues, does the Consumer Financial Protection Bureau's ("CFPB") interpretation of Regulation X affect the analysis. First, as we have noted, where, as here, the regulatory language unambiguously answers the question at issue, we do not consider the administering agency's interpretation of its regulation. *See Lage*, 839 F.3d at 1010. And second, even if we did, the CFPB's commentary concerning Regulation X's prohibition of servicers from moving for foreclosure judgment or order of sale comports with the plain language of the regulation for two reasons.

First, the CFPB suggests that Regulation X prohibits only the filing of dispositive motions, as opposed to non-dispositive motions:

> The prohibition on a servicer moving for judgment or order of sale includes making a *dispositive motion* for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment which may directly result in a judgment of foreclosure or order of sale.

and that it sought to move full-steam ahead with the foreclosure sale. The language of RoundPoint's motion demonstrates this is not accurate.

14

*See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,897 (Feb. 14, 2013) (emphasis added).  But as we have noted, a motion to reschedule is not a dispositive motion.  So Regulation X does not prohibit the filing of such a motion by a servicer.

Second, RoundPoint's suspension of foreclosure proceedings when it filed its motion to reschedule was consistent with the CFPB's discussion of the propriety of suspending a sale during a trial modification plan.  The CFPB explained that "it is appropriate to *suspend* a foreclosure sale when a borrower is performing under an agreement on a loss mitigation option."  *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10,833 (emphasis added).  The CFPB has also stated, "[I]t is already standard industry practice for a servicer to suspend a foreclosure sale during any period where a borrower is making payments pursuant to the terms of a trial loan modification."  *Id*. And the CFPB has commented that, under the regulation, "it is a covered error for a servicer to fail to . . . suspend a foreclosure sale when, for example, the borrower is performing under a loss mitigation agreement."  *Id.* at 10,847.

"To suspend" means "[t]o hold in abeyance; defer . . . ."  *See Suspend*, The American Heritage Dictionary of the English Language (5th ed. 2011).  That is very different from canceling something altogether, like Landau asserts RoundPoint should have done with the previously existing order of sale.  "To cancel" means "[t]o

15

annul or invalidate . . . ." *See Cancel*, The American Heritage Dictionary of the English Language (5th ed. 2011).    The CFPB's discussion unambiguously contemplates "suspen[sion]," not cancellation, of a foreclosure sale when a borrower is performing under a loss-mitigation agreement.

Here, as we have noted, RoundPoint suspended the foreclosure proceedings when it filed its motion to reschedule.  RoundPoint also informed the court that a loss-mitigation plan was pending.  Significantly, the foreclosure sale did not take place.  And although RoundPoint sought for the court to reschedule the foreclosure sale for a future date, it still asked the court to delay the sale pending the outcome of the trial loss-modification plan.  That outcome is consistent with how the CFPB intended Regulation X to operate.

## IV.

In short, we agree with the district court that Landau failed to state a claim for violation of 12 C.F.R. § 1024.41(g).  And because Landau's FDCPA claim was also based on a violation of Regulation X, we similarly conclude that she failed to state a claim on that basis.  We therefore affirm the district court's dismissal of the action.

**AFFIRMED.**

16