[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13332

Non-Argument Calendar

_____

RENATO DE MIRANDA GRANZOTI,

Petitioner,

*versus*

SECURITIES AND EXCHANGE COMMISSION,

Respondent.

_____

Petition for Review of a Decision of the
Securities and Exchange Commission
Agency No. 14-cv-11858

_____

Before JILL PRYOR, LUCK, and MARCUS, Circuit Judges.

PER CURIAM:

Renato De Miranda Granzoti blew the whistle on a pyramid scheme conducted by TelexFree, Inc., so he requested an award from the SEC after it investigated and successfully brought an enforcement action against TelexFree. But the SEC denied his application, determining that Granzoti's tip did not lead to its investigation or suit against TelexFree. Granzoti now petitions this Court for review of the SEC's final order, claiming that the SEC misinterpreted its own regulation containing the requirements to receive an award and relied on insufficient evidence in reaching its decision. After careful review, we deny the petition for review.

**I.**

On February 25, 2013, Granzoti tipped the SEC off about a "[f]raudulent investment scheme" by TelexFree. He wrote that the company had been "presenting itself as a multilevel marketing business operating in the Voice-over-IP sector," but had "show[n] many signs of a Ponzi scheme, curiously focusing their efforts in Brazil." According to Granzoti, the perpetrators behind TelexFree used a U.S. company to build legitimacy and lured in new customers with testimonials of high returns on investments.

On January 9, 2014, the SEC opened an investigation of TelexFree, and on April 15, the SEC filed suit against TelexFree in the U.S. District Court for the District of Massachusetts. It alleged violations of the Security Exchange Act of 1934, 15 U.S.C. § 78a *et*

*seq.*, Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, accusing the company of running a pyramid scheme. After years of litigation, the court entered final judgment against TelexFree on May 25, 2017, enjoining the company from future securities violations and ordering about $1.5 million in monetary sanctions.

On June 30, 2017, the SEC's Office of the Whistleblower invited claimants to submit whistleblower applications within ninety days for the TelexFree investigation and suit. Granzoti timely filed an application on September 26. He claimed that he was entitled to his award because he provided original and credible information voluntarily to the SEC and that information led to a successful enforcement action resulting in over $1 million in sanctions.

The SEC preliminarily denied Granzoti's claim. In its preliminary order, the SEC stated that Granzoti's information "was never provided to or used by staff handling the Covered Action or underlying investigation (or examination) and those staff members otherwise had no contact with" Granzoti. The SEC included a declaration by James Fay, an SEC attorney, who confirmed that Granzoti's tip was not used and no one at the agency spoke with Granzoti "before, during or after the TelexFree investigation."

Granzoti filed a written response challenging the preliminary decision, but the SEC entered a final order denying him any award on September 6, 2022. The order noted that, under 17 C.F.R. § 240.21F-4(c)(1), "awards are based upon the actual use of a claimant's information by Commission staff" -- not "potential or

theoretical use." It then credited two declarations. The first declaration said that the SEC opened the case based on a tip from the U.S. Attorney's Office for the District of Massachusetts. The second declaration revealed that Granzoti's tip was referred to the Federal Trade Commission and the Massachusetts Attorney General's Office and was then closed "with a disposition of 'no further action.'" The SEC employees who referred the tip to those agencies never sent the information to anyone assigned to the investigation, and neither the FTC nor the Massachusetts Attorney General's Office had any role in the investigation or referral of the case. As a result, the SEC denied Granzoti's claim, finding that his tip "did not cause the Commission to inquire into different conduct and did not significantly contribute to the success of the action."

This timely petition for review followed.

## II.

On a petition for review, we will "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). The Commission's "application of the law" is reviewed *de novo*. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). In reviewing factual findings, we recognize that substantial evidence "requires more than a scintilla"; it "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021)

(quotations omitted). Further, in our substantial evidence review, "we may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [agency]." *Id.* (quotations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## A.

First, we are unpersuaded by Granzoti's claim that the SEC incorrectly decided that he was ineligible for a whistleblower award upon finding that it did not use his tip in investigating TelexFree. Under the statute, the SEC "shall pay an award" to any "whistleblower[] who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action." 15 U.S.C. § 78u-6(b)(1). "[A] claimant's failure to satisfy any one of these statutory requirements dooms his whistleblower award application." *Ross v. SEC*, 34 F.4th 1114, 1119 (D.C. Cir. 2022). The case before us concerns only the requirement that the information "led to the successful enforcement."[1]

The SEC has promulgated a rule that lists three ways to satisfy this requirement. *See* 17 C.F.R. § 240.21F-4(c)(1)–(3); *see also*

---

[1] Granzoti also argues that he met the statutory and regulatory definition of a "whistleblower." But the SEC never discussed that issue in its order, and because we agree with the SEC that Granzoti's information did not "le[a]d to the successful enforcement" of an action, it is unnecessary to do so now.

*Doe v. SEC*, 28 F.4th 1306, 1312 (D.C. Cir. 2022) (per curiam).  Only the first is relevant here, and it reads:

> You gave the Commission original information that was sufficiently specific, credible, and timely to cause the staff to commence an examination, open an investigation, reopen an investigation that the Commission had closed, or to inquire concerning different conduct as part of a current examination or investigation, and the Commission brought a successful judicial or administrative action based in whole or in part on conduct that was the subject of your original information.

17 C.F.R. § 240.21F-4(c)(1).  Our job is to determine whether the SEC properly applied this rule.  When interpreting a regulation, we first "evaluate whether the plain language of the regulation unambiguously answers the question at issue." *Landau v. RoundPoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1369 (11th Cir. 2019).  If the language is clear, that's that.  Only if a rule is ambiguous do we consider whether we should defer to the agency's reading. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

Here, the plain text of this rule confirms the SEC's denial of Granzoti's award.  The rule expressly requires that a whistleblower's information was "sufficiently specific, credible, and timely *to cause*" the SEC to investigate, and that the SEC brought a successful action based, at least in part, on conduct that was the subject of the whistleblower's information.   17 C.F.R. § 240.21F-4(c)(1)

(emphasis added). "To cause" is "[t]o bring about or effect." *Cause*, Black's Law Dictionary (11th ed. 2019). Naturally, then, something that is never considered by the SEC could not have caused the SEC to investigate. If the SEC didn't consider the information, then the information could not bring about or effect a result.

This interpretation of the rule is bolstered by the statutory text for which the rule was promulgated. The statute calls for "original information . . . that *led* to the successful enforcement" -- not information that *could have led* or *may have led* or *would have led* to a successful enforcement, if only the SEC had used it. 15 U.S.C. § 78u-6(b)(1) (emphasis added). Some excerpts of the preamble to the rule's announcement support this reading, too. *See Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34,300, 34,321– 22 (June 13, 2011) ("If [a whistleblower]'s submission were sufficiently specific, credible, and timely that it caused us to open an investigation, and if a successful enforcement action resulted, then we would consider whether [the whistleblower]'s submission 'led to' our successful action under . . . Rule 21F-4(c)(1)."); *see also id.* at 34,311 n.95 ("[W]here information is obtained through the normal cooperative arrangements between the Commission and other regulators, the whistleblower's submission would not be deemed to have caused the opening of an investigation, . . . such as to make the whistleblower eligible for an award under Rule 21F-4(c).").

Finally, other courts agree with this interpretation. The D.C. Circuit has noted without analysis that award eligibility turns on, among other things, whether a tip "caused" the SEC to

investigate. *See Doe*, 28 F.4th at 1312 (summarizing the rule to require that "the whistleblower's original information caused the SEC" to open, reopen, or expand an investigation (quotations omitted)); *see also Doe v. SEC*, 729 F. App'x 1, 3 (D.C. Cir. 2018) (per curiam) ("Information leads to a successful enforcement action if it . . . causes the Commission to open, reopen, or expand an examination or investigation . . ." (quotations omitted)). And, in considering the reasonableness of the rule's promulgation, the Second Circuit has found it "not arbitrary or capricious for the SEC to conclude that [a whistleblower's] submissions did not provide 'original information to the Commission that led to' a successful enforcement action because [the whistleblower's] submissions were not used by the" agency. *Kilgour v. SEC*, 942 F.3d 113, 123 (2d Cir. 2019) (emphasis omitted) (quoting 15 U.S.C. § 78u-6(b)(1)).

Despite the regulation's unambiguous requirement that the information provided by the whistleblower caused the SEC to open, reopen, or expand an investigation, Granzoti searches for an alternative approach to the regulation. He argues that the text creates an "objective test to determine whether the character of the information was sufficient" for the SEC to use, irrespective of whether the SEC used it. So, in his view, the rule merely requires that the "original information is 'that' which is 'sufficient[]' to 'cause,' not that which did cause, because the restrictive relative clause applies to the entire suite of sufficiency: specificity, credibility, and timeliness."

We are unpersuaded by Granzoti's proposed reading. For one, there is no authority suggesting that this regulation calls for an objective test. What's more, this interpretation adds words to the text, equating the meaning of "to cause" with "to have caused" in the process. *Cf. Catalyst Pharm., Inc. v. Becerra*, 14 F.4th 1299, 1309 (11th Cir. 2021) ("And we are not allowed to add or subtract words from a statute; we cannot rewrite it." (quotations omitted)). Granzoti urges that his reading is supported by the SEC's decision to use "to cause" rather than "'and that caused,' or another similar wording that would have separated 'cause' from the sufficiency of the information." But simply because Grazoti would have preferred different wording does not undermine the SEC's clear requirement that the information must be sufficient "to cause" an investigation rather than "to have caused" one.

Because the plain language requires that the whistleblower's information cause the investigation, that "is the end of the matter." *See Landau*, 925 F.3d at 1369. The SEC denied Granzoti's application based on that interpretation. Its order was properly grounded in the text of the regulation, and thus not arbitrary or capricious.

**B.**

We also find no merit to Granzoti's claim that the SEC did not rely on substantial evidence to deny his requested award. As the record reflects, the SEC's final determination was supported by two declarations that squarely established that Granzoti's tip was never used.

The first declaration came from James Fay, an officer from the SEC's enforcement staff assigned to the TelexFree investigation. He confirmed that the TelexFree "investigation was opened as a result of a referral by the United States Attorney's Office for the District of Massachusetts on January 9, 2014," and that the U.S. Attorney's Office never saw any information from Granzoti. Based on "[Fay's] own personal involvement in the TelexFree Investigation, as well as after consultation with other BRO Enforcement staff on the TelexFree Investigation," he declared that no one on the SEC's or U.S. Attorney's investigation team spoke with or tried to speak with Granzoti. And he concluded that "[n]one of the information provided by [Granzoti] helped advance the TelexFree Investigation," and "[n]one of [Granzoti's] information was used in, or had any impact, on the charges brought by the Commission in the TelexFree Action."

The second declaration was from Frank Correll, an attorney in the SEC's Office of the Whistleblower. He reviewed the SEC's Tips, Complaints, and Referrals system and concluded that Granzoti's tip was not "forwarded to staff assigned to the investigation that resulted in the Covered Action, nor . . . to other investigative staff at the Commission." Instead, it was forwarded only to the FTC and the Massachusetts Attorney General's Office. These declarations -- which were both credited by the SEC -- provide "more than a scintilla," and would allow a reasonable person to conclude that Granzoti's tip was not used. *See Viverette*, 13 F.4th at 1314.

22-13332                Opinion of the Court                11

As for Granzoti's argument that the substance of the declarations supported a finding that the SEC did, in fact, use his information, we disagree. First, he says that Fay's partially redacted declaration was "based on a number of unsubstantiated 'understandings,'" and "only [spoke] to what actions were or were not taken at one regional office of the SEC, rather than by the SEC as a whole."[2] But this argument does nothing to explain why the SEC should not have credited Fay's "understandings." Indeed, Fay was particularly qualified to say whether Granzoti's tip was ever used by the very office that undertook the investigation. He worked "as one of the primary Enforcement attorneys assigned to the" TelexFree investigation and "consult[ed] with other [Boston Regional Office] Enforcement staff on the TelexFree Investigation" in the preparation of his declaration.

Second, Granzoti complains that "the declarant state[d] that the claim was 'forwarded to another government regulator for review'" before the SEC opened its own investigation of TelexFree but did "not offer information regarding which regulator it was forwarded to nor discuss the outcome of that review." This is proof, he asserts, that the SEC must have reviewed and used the tip.

---

[2] It is not clear whether Granzoti takes issue with the fact that Fay's declaration had redactions. To the extent that he does, the challenge fails. A declaration may be redacted "as necessary to comply with any statutory restrictions, to protect the Commission's law enforcement and regulatory functions, and to comply with requests for confidential treatment from other law enforcement and regulatory authorities." 17 C.F.R. § 240.21F-12(b). Granzoti offers no argument for why these redactions were impermissible.

However, Correll's declaration clarifies that the tip was sent to the FTC and the Massachusetts Attorney General's Office, so Granzoti is mistaken. Regardless, we do not see how forwarding a tip to *another government agency* sheds any light on whether the *SEC* used Granzoti's tip. If anything, sending the information elsewhere actually bolsters the notion that the SEC never used it. Likewise, what the FTC or the Massachusetts Attorney General's Office did with that information has no bearing at all on whether it led the SEC to successfully sue TelexFree.

Third, he takes issue with the fact that Correll's declaration "was not initially provided" to him. This argument appears unrelated to whether the record was sufficient for the SEC to deny his award. But, in any event, it doesn't move the needle. When Granzoti challenged the preliminary disposition, the SEC was required to provide any sworn declarations that it relied on. *See* 17 C.F.R. §§ 240.21F-10(e)(1)(i), 240.21F-12(a)(6); *see also Kilgour*, 942 F.3d at 124. Correll's declaration expressly stated that he made it *in response to* Granzoti's challenge to the preliminary disposition. In other words, the SEC provided the declaration as soon as it issued an order that relied on it.

Fourth, Granzoti suggests that "there is a potential feedback loop of the information going from the whistleblower, through the SEC, to Massachusetts, and back to the SEC." Yet in so thinking, Granzoti confuses two unrelated Massachusetts-based agencies. The SEC provided Granzoti's tip to the Massachusetts Attorney General's Office -- a state entity. Later on, the U.S. Attorney for

the District of Massachusetts -- a federal entity -- provided the tip that led to the SEC's involvement in the TelexFree case. There is no feedback loop because Granzoti offers no evidence that the state attorney general ever passed along the information to the federal prosecutor. His only link is that they are located in the same state.

The long and the short of it is that the evidence supported a finding that the SEC never used Granzoti's tip. And because it never used his tip, the information couldn't have led to the successful action against TelexFree. As a result, the SEC reasonably denied Granzoti's request for a whistleblower award.

**PETITION DENIED.**